UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
B.C., on behalf of her minor son, B.M., :
:
:
:
Plaintiff, :           **OPINION AND ORDER**
:
- against - :
:           12 Civ. 5605 (ER)
PINE PLAINS CENTRAL SCHOOL DISTRICT, :
:
:
:
Defendant. :
----------------------------------------------------------x

     Plaintiff B.C., on behalf of her minor child, B.M. (the "Plaintiff"), brings an action against Pine Plains Central School District ("Defendant" or the "District") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(2), challenging the District's placement of her son, asserting that the District failed to provide him with a free appropriate public education ("FAPE"), and seeking reimbursement for his private school tuition. Compl., Doc. 1. Plaintiff also requests that this Court convene *de novo* proceedings to accept and review new evidence relating to the student's progress at his private school during the 2011-2012 school year. Plaintiff brings this case as an appeal from a decision of the State Review Officer ("SRO"), who found in favor of the District. Defendant has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def. Mot., Doc. 6. For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

    **I. Statutory Framework**

     Congress enacted the IDEA to encourage the education of children with disabilities. *E.A.M. ex rel. E.M. v. N.Y.C. Dep't of Educ.*, 11 Civ. 3730 (LAP), 2012 WL 4571794, at *1 (S.D.N.Y. Sept. 29, 2012) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 179 (1982)). The statute

mandates that any state receiving federal funds must provide a free appropriate public education ("FAPE") to disabled children. 20 U.S.C. § 1412(a)(1)(A); *Rowley*, 458 U.S. at 179. The FAPE provided by the state must include "special education and related services" tailored to meet the unique needs of the particular child, 20 U.S.C. § 1401(9), and be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207.

A public school ensures that a student with disabilities receives a FAPE by providing the student with an Individualized Education Plan ("IEP"). *Polera v. Bd. Of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002). An IEP is a written statement, collaboratively developed by the parents, educators, and specialists, that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honing v. Doe*, 484 U.S. 305, 311 (1988), *superseded by statute*, *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009).

Because New York State receives federal funds under the IDEA, it must comply with the requirements of the statute. *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998). In New York, the task of developing an IEP rests with local Committees on Special Education ("CSEs"), whose members are appointed by the board of education or trustees of the school district. N.Y. Educ. Law § 4402(1)(b)(1); *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992). In developing a child's IEP, the CSE must consider four factors: "(1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." *E.A.M. ex rel. E.M.*, 2012 WL 4571794, at *1 (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007)) (internal quotation marks omitted). The IEP must "be reasonably calculated to enable the child

to receive educational benefits," *Gagliardo*, 489 F.3d at 107 (citation and internal quotation marks omitted), "likely to produce progress, not regression," and afford the student with an opportunity greater than mere "trivial advancement." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Walczak,* 142 F.3d at 130) (internal quotation marks omitted). However, a school district is not required to provide "every special service necessary to maximize each handicapped child's potential," *id.* (citation and internal quotation marks omitted), or "everything that might be thought desirable by loving parents." *Walczak,* 142 F.3d at 132 (citation and internal quotation marks omitted). Furthermore, under an IEP, "education [must] be provided in the 'least restrictive setting consistent with a child's needs'" and the CSE must "be mindful of the IDEA's strong preference for 'mainstreaming,' or educating children with disabilities 'to the maximum extent appropriate' alongside their non-disabled peers." *M.H. v. NYC Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (citations omitted).

In addition to imposing the IEP requirement, the IDEA provides for due process procedures to promptly resolve disputes that arise between parents and school districts, so that children will receive appropriate special education services. 20 U.S.C. § 1415(b)(6)-(7). New York State has implemented a two-tiered system of administrative review for disputes regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability…or the provision of a [FAPE] to such a student." *Id.*; 8 NYCRR § 200.5(i)(1). First, "[p]arents may challenge the adequacy of their child's IEP in an 'impartial due process hearing' before an [Impartial Hearing Officer ("IHO")] appointed by the local board of education." *E.A.M. ex rel. E.M.,* 2012 WL 4571794, at *2 (quoting *Gagliardo*, 489 F.3d at 109). Either party may then appeal the IHO's decision to a State Review Officer ("SRO"), an officer of the State's

3

Board of Education tasked with conducting an impartial review of the proceedings. *Id.*; 34 C.F.R. 300.514(b)(2); 8 NYCRR § 279.1(d).

To initiate an appeal from the IHO's decision to the SRO, state regulations require the petitioning party to effectuate timely personal service of a verified petition upon the respondent. 8 NYCRR §§ 279.2(b), 279.7, 279.13. If the parent is the party seeking review, the regulations also require the parent to personally serve a notice of intention to seek review upon the school district, "not less than ten days before the service of a copy of the petition upon such school district, and within 25 days from the date of the IHO's decision sought to be reviewed." 8 NYCRR § 279.2(b). Petitions for review to the SRO must be served "within 35 days from the date of the decision sought to be reviewed," and, "[i]f the decision has been served by mail upon the petitioner, the date of mailing and the four days thereafter shall be excluded in computing the 25- or 35-day period." 8 NYCRR § 279.2(b); 8 NYCRR § 279.13. If a petitioner fails to timely initiate an appeal to the SRO, the reasons for failure to timely seek review must be set forth in the petition, and "[t]he SRO, in his or her sole discretion, may excuse a failure to timely serve or file a petition for review…for good cause shown." 8 NYCRR § 279.13.

After, and only after, exhaustion of these administrative procedures, an aggrieved party may seek independent judicial review in federal or state court. *See, e.g., Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citing 20 U.S.C. § 1415(i)(2)(A)). A district court may "receive the records of the administrative proceedings" and, if requested by the parties, hear additional evidence. 20 U.S.C. § 1415(i)(2)(C). The district court then "grant[s] such relief as the court determines is appropriate," based on the preponderance of the evidence. *Id.* Under the statute, "appropriate" relief may include reimbursement for the cost of a private school placement. *E.A.M. ex rel. E.M.*, 2012 WL 4571794, at *2.

4

## II. Background

Plaintiff is the mother and guardian of B.M., a 14 year-old boy afflicted with severe dyslexia. Compl. ¶¶ 2, 6. Prior to the 2011-2012 school year—from kindergarten through fifth grade—he attended public school in the District. Rushfield Aff. Supp. Mot. Dismiss ("Rushfield Aff."), Ex. C (IHO Decision at 1), Doc. 7. In spring of 2011, the District classified B.M. as learning disabled. *Id.*; Compl. ¶ 2.

On April 5, 2011, the District convened a CSE meeting, at which it offered B.M. a placement at a middle school in the District. Compl. ¶ 14. Plaintiff rejected the proposed placement because, she alleges, it "failed to allow her son to make adequate progress in his areas of disability." *Id.* ¶ 15. Thereafter, Plaintiff unilaterally removed her child from the public school system and placed him at the Kildonan School ("Kildonan"), "an internationally known placement for students with dyslexia." *Id.* ¶ 16. Plaintiff began the application process for her son's admission to Kildonan on or about April 13, 2011, and he commenced school there on September 8, 2011. *See* Rushfield Aff., Ex. C (IHO Decision at 14). Plaintiff avers that Kildonan is "fully capable" of addressing B.M.'s special education needs.[1] Compl. ¶16.

### a. The IHO Hearing

By due process complaint notice dated June 27, 2011, Plaintiff requested an impartial hearing, asserting that the District failed to offer an appropriate program for her son, and seeking tuition reimbursement for his placement in Kildonan. *Id.* ¶ 18; Rushfield Aff., Ex. B (SRO Decision at 3). Carl L. Wanderman, an Impartial Hearing Officer (the "IHO"), conducted a six-

---

[1] Kildonan is a "non-state approved private school." Compl. ¶ 5. The SRO Decision explains that Kildonan has not been approved by the Commissioner of Education "as a school with which school districts may contract to instruct students with disabilities." *See* Rushfield Aff., Ex. B (SRO Decision at 3, n.1) (citing 8 NYCRR §§ 200.1(d), 200.7).

5

day hearing regarding Plaintiff's claim. Compl. ¶ 19. On January 19, 2012, the IHO issued a decision finding that the District had offered B.M. a FAPE, and denying Plaintiff's claim for tuition reimbursement. *Id.*

### b. Plaintiff's Appeal to the SRO

Dissatisfied with the IHO's conclusion, Plaintiff sought review from the SRO. *Id.* ¶ 21. On February 22, 2012, Plaintiff served a Notice of Petition, a Verified Petition and a Memorandum of Law in Support of Petition on the District. Rushfield Aff. ¶ 7, Ex. D. On February 23, 2012, the SRO returned Plaintiff's Verified Petition to Plaintiff's counsel with a letter, indicating that it "[would] not be considered for review" because it exceeded twenty (20) pages, the maximum allowable page limit imposed by 8 NYCRR § 279.8(5). Rushfield Aff. ¶ 8, Ex. E (SRO Letter). The February 23, 2012 letter from the SRO further instructed that, "[i]n accordance with 8 NYCRR § 279.13, should a revised Petition be untimely served, the reasons for failure to timely serve the petition for review within the time specified must be set forth in the petition." *Id.* On February 27, 2012, Plaintiff filed a notice of petition, a revised petition (the "Second Petition"), and a memorandum of law. Rushfield Aff., Ex. F. Plaintiff's cover letter accompanying the Second Petition reflects that it was sent by overnight mail to the District's counsel on February 27, 2012. *Id.* The Second Petition states, at 19, that Plaintiff's counsel "had been under the mistaken belief that the page limit for the Petition was 25, not 20, pages." *Id.* The Second Petition includes a verification dated February 21, 2012, which appears to be a photocopy of the verification from the original, overlong petition. *Id.*; Rushfield Aff., Ex. D (Original Petition). The Second Petition does not include any representations concerning personal service upon the District. Rushfield Aff., Ex. F.

The District filed its Verified Answer to the Second Petition on March 7, 2012, and, among other defenses, asserted therein that the Second Petition should be dismissed because Plaintiff failed to serve the District with a notice of intention to seek review prior to serving the petition, and failed to ever personally serve the Second Petition upon the District. Whatley Aff., Ex. 8 (Answer ¶¶ 64-70), Doc. 9.

### c. The SRO Decision

On April 11, 2012, the SRO issued a decision denying Plainiff's appeal based upon "nonconformities with State regulations, including the parent's failure to initiate the appeal in a timely manner with proper service." Rushfield Aff., Ex. B (SRO Decision at 7). Specifically, the SRO cited the following procedural errors: (1) Plaintiff did not personally serve the District with the Second Petition, nor did personal service occur pursuant to any statutory exceptions to the personal service requirement; (2) Plaintiff did not file an affidavit of service, as 8 NYCRR § 279.4(a) requires, to show that the Second Petition was personally served on the District; (3) Plaintiff failed to offer any explanation why service could not be effectuated within the proper timeframe (*i.e.*, by February 28, 2012); (4) Plaintiff failed to serve a notice of intention to seek review upon the District ten days in advance of filing the petition, which resulted in delay of the submission of the hearing record to the SRO; (5) Plaintiff's Memorandum of Law failed to include a table of contents, in violation of 8 NYCRR § 279.8(a)(6); and (6) the Second Petition lacked verification, and instead attached a photocopy of the verification from the original petition. Rushfield Aff., Ex. B (SRO decision at 5-6). In addition, the SRO noted that Plaintiff never filed a reply to the procedural defenses raised by the District, and that "experienced counsel, who has previously appeared before the Office of State Review," represented Plaintiff. *Id.* The SRO did not comment on the merits of Plaintiff's claims. *Id.*

After the SRO's decision, B.M. continued to attend Kildonan. Compl. ¶ 23. According to Plaintiff, during the 2011-12 school year at Kildonan, B.M. made progress "in the primary areas of his disability" and received "substantial" social and educational benefits. *Id.*

### d. Procedural History of Plaintiff's Case before This Court

Plaintiff commenced the instant case by filing the Complaint on July 20, 2012. Plaintiff alleges that the SRO's decision was "based on procedural errors, which…[were] in [the SRO's] discretion to overlook so as to reach the merits of the appeal." Compl. ¶ 21. On October 23, 2012, the Court held a pre-motion conference at which Defendant sought, and the Court granted, leave to file a motion to dismiss. On November 26, 2012, Defendant moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def. Mot.; Def. Mem. Law. Supp. Mot. Dismiss ("Def. Mem."), Doc. 8. On December 10, 2012, Plaintiff filed its response to Defendant's motion. Pl. Mem. Law Opp. Def. Mot. Dismiss ("Pl. Opp."), Doc. 10. On December 21, 2012, Defendant filed its reply in support of its motion. Def. Reply Supp. Mot. Dismiss ("Def. Reply"), Doc. 11.

Defendant chiefly argues that, because Plaintiff failed to comply with the procedural requirements for initiating her appeal to the SRO, she failed to exhaust administrative remedies under the IDEA prior to filing this suit. Def. Mem. 3-4. Consequently, this Court lacks subject matter jurisdiction, and the Complaint should be dismissed. *Id.*

Plaintiff counters that she properly exhausted administrative remedies before initiating this suit, but that, even if she failed to do so, "such failure would not divest this Court of its subject matter jurisdiction" over her case. Pl. Opp. 5. Plaintiff also argues that the SRO's decision to dismiss her case on procedural grounds was "arbitrary," and thus, improper. *Id.* at 7.

8

## III. Discussion

### A. 12(b)(1) Motion to Dismiss Standard

When the district court lacks the statutory or constitutional power to adjudicate a case, Rule 12(b)(1) requires that it be dismissed for absence of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party claiming subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citations omitted). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw argumentative inferences in the plaintiff's favor. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Where, as here, a party also seeks dismissal on 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first because the absence of subject matter jurisdiction moots all other issues. *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

### B. Standard of Review for IDEA Cases

#### a. IDEA Exhaustion Requirement

It is well-settled that the IDEA requires an aggrieved party to exhaust the available administrative procedures prior to bringing suit in a federal or state court. *See, e.g., Cave*, 514

9

F.3d at 245 (citing 20 U.S.C. § 1415(i)(2)(A)); *J.S.*, 386 F.3d at 112. The IDEA's exhaustion rule is designed to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Cave*, 514 F.3d at 245-46 (citations omitted); *see also Heldman*, 962 F.2d at 159 (exhaustion "permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes"). The parties do not dispute the existence of the exhaustion requirement. Rather, they disagree regarding: (1) whether procedural missteps, such as a plaintiff's failure to timely file or serve a petition for review, constitute failure to exhaust administrative remedies; and (2) the consequences of such a failure. *See* Pl. Opp. 5-9; Def. Reply 1-6.

A plaintiff's failure to exhaust administrative remedies under the IDEA "deprives the Court of subject matter jurisdiction." *See, e.g., Cave*, 514 F.3d at 245; *Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir. 2002). The exhaustion requirement may be excused, but only "when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." *A.D. v. Bd. of Educ. of City Sch. Dist. of City of New York*, 690 F. Supp. 2d 193, 216 (S.D.N.Y. 2010) (quoting *Cave*, 514 F.3d at 249). Accordingly, the threshold issue before the Court is whether Plaintiff exhausted the administrative remedies available to her prior to initiating the instant suit, because the effect of failure to do so is dismissal.[2]

---

[2] Plaintiff cites *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 159-62 (2010), and *Levine v. Greece Cent. Sch. Dist.*, 353 F. App'x 461 (2d Cir. 2009), to argue that a plaintiff's failure to exhaust administrative remedies prior to initiating suit does *not* divest this Court of subject matter jurisdiction. Pl. Opp. 5. Plaintiff's arguments are unavailing. In *Reed Elsevier*, the Supreme Court held that the Copyright Act's registration requirement is a claims-processing rule, *i.e.*, a prerequisite to filing an infringement claim, rather than a jurisdictional obstacle to bringing suit. 559 U.S. at 166. In *Levine*, the Second Circuit neither overruled *Cave* or *Polera*, nor did it decide the question of whether the exhaustion requirement is a jurisdictional rule or a claims processing rule. Plaintiff also cites the Second Circuit's opinion in *Baldessarre v. Monroe-Woodbury Central School District* to support her claim. Pl. Opp. 6 (citing 496 F. App'x at 133 n.3). The very passage quoted by Plaintiff, however, indicates that the Court *declined* the plaintiffs' invitation to abandon the existing Second Circuit precedent, and that, "[i]n any event,

10

Courts in this Circuit have held that—absent good cause shown—a party who fails to make a timely appeal to the SRO, or fails to timely serve the respondent, has failed to satisfy the exhaustion requirement. *See R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 288-89 (S.D.N.Y. 2012) (finding that parent seeking tuition reimbursement failed to exhaust administrative remedies, thereby depriving the court of subject matter jurisdiction, where parent timely served counsel, but did not serve the school district itself until one day after the deadline); *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440-41 (W.D.N.Y. 2012) (deeming parent's untimely appeal to the SRO a failure to exhaust administrative remedies, which "deprive[s]...the courts...of subject matter jurisdiction"); *Kelly ex rel. M.K. v. Saratoga Springs City Sch. Dist.*, No. 09 Civ. 276 (GLS) (RFT), 2009 WL 3163146, at *5 (N.D.N.Y. Sept. 25, 2009) (finding that parents who filed their petition to the SRO three days late failed to exhaust administrative remedies); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, No. 99 Civ. 9294 (CSH), 1999 WL 980164, at *3 (S.D.N.Y. Oct. 28, 1999), *rev'd on other grounds*, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ("Absent good cause...the failure to bring a timely appeal in compliance with the relevant regulations should be equated with failure to bring an appeal at all.").

---

whether exhaustion is a jurisdictional prerequisite or simply an affirmative defense is irrelevant here because the defendants properly raised that argument in their answer to plaintiff's complaint." *Id.*

It is true that courts in this Circuit have noted "some divergence" as to whether the IDEA's exhaustion requirement is a "jurisdictional" rule or "claims-processing" rule. *See, e.g., R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 289 n.1 (S.D.N.Y. 2012) (citing *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 680 n.7 (S.D.N.Y. 2011)). However, the district courts in the Second Circuit are bound by existing precedent—chiefly, *Cave* and *Polera*—until that precedent is overruled. *Piazza*, 777 F. Supp. 2d at 680 n.7; *Baldessarre*, 496 F. App'x at 134 ("The District Court's holding that the plaintiffs' failure to exhaust the IDEA's administrative remedies required dismissal of their complaint [for lack of subject matter jurisdiction] was clearly compelled by our Circuit precedent.").

11

### b. Scope of Review of the SRO's Decision

An SRO's dismissal of an appeal from an IHO's decision, when based on procedural grounds, will not be overturned unless it is arbitrary and capricious. *See, e.g., R.S.*, 899 F. Supp. 2d at 290-91 (citations omitted); *Kelly*, 2009 WL 3163146 at *5; *Grenon v. Taconic Hills Cent. Sch. Dist.*, No. 05 Civ. 1109 (LEK) (RFT), 2006 WL 3751450, at *5 (N.D.N.Y. Dec. 19, 2006). The "arbitrary and capricious" inquiry requires the Court to determine whether the SRO's decision was supported by a consideration of the relevant factors and whether a clear error of judgment occurred. *R.S.*, 899 F. Supp. 2d at 290-91 (citation omitted). "The law of arbitrary and capricious administrative behavior…requires consistency in agencies' application of law," and "ultimately…is a rule of reasonableness" that safeguards against unpredictability. *Id.* at 291.

### C. Analysis

The Court declines to review the merits of Plaintiff's claim because, by failing to timely and properly initiate her appeal to the SRO, she failed to exhaust her administrative remedies under the IDEA. This Court is bound by the rule established by the Second Circuit in *Cave* and *Polera*, that a plaintiff's failure to satisfy the IDEA's exhaustion requirement deprives the Court of subject matter jurisdiction, and the Court finds no reason to deviate from the line of precedent in this Circuit holding that a plaintiff's procedural errors, such as failure to timely serve or file a petition for SRO review, will be deemed a failure to exhaust administrative remedies. *See, e.g., R.S.*, 899 F. Supp. 2d at 291; *Kelly*, 2009 WL 3163146, at *5; *T.W.*, 891 F. Supp. 2d at 440-41.

There is no dispute that Plaintiff failed to seek review of the IHO's decision in compliance with the practice requirements of Part 279 of the New York State regulations. Plaintiff was represented by experienced counsel, who not only appeared before the Office of State Review ("OSR") on at least nine prior occasions, but also received a specific warning from

12

the SRO in this case regarding the importance of compliance with state procedural regulations after the SRO rejected Plaintiff's first attempted petition submission on February 22, 2013. *See* Rushfield Aff., Ex. E (SRO Letter); Rushfield Aff. Ex. B (SRO Decision at 6). Notwithstanding counsel's experience and the SRO's warning, on February 27, 2013, counsel filed a second procedurally defective petition.[3] Most significantly, Plaintiff concedes that she only served the Second Petition upon the District's counsel, but never personally served the District. Pl. Opp. 8. Plaintiff also failed to file or serve a notice of intention to seek review ten days prior to filing the Second Petition. While the SRO had the authority to excuse Plaintiff's untimely service upon a showing of good cause, he declined to do so, and as a result, the IHO's decision became final.

Plaintiff's excuse for lack of timely personal service, offered for the first time in her Opposition—that service upon Defendant's counsel sufficed in lieu of personal service—is unavailing.[4] *See* Pl. Opp. 9. As the District points out in its Reply, SRO precedent specifies that 8 NYCRR § 275.8(b) permits service of an amended petition upon counsel, rather than the District, only when the original verified petition was (1) *accepted* for filing by the SRO and (2) personally served in compliance with the regulations. *See* Def. Reply 8 (citing *Application of a Student with a Disability*, Appeal No. 12-066, at 8, which specifically addresses Plaintiff's case, Appeal No. 12-042). Plaintiff did not qualify for exemption from the personal service requirement because the SRO rejected Plaintiff's first submission, and the Second Petition failed to set forth any claim that the District had waived personal service. NYCRR § 279.2(b);

---

[3] Among other things, the Second Petition failed to include an affirmation of service, a table of contents, or a proper verification (the "verification" for the Second Petition appears to be an exact photocopy of the verification from the rejected February 22, 2013 petition).

[4] Plaintiff also argues that it is "of critical importance" that, unlike the first petition, the SRO did not reject outright the Second Petition, but cites no authority, and provides no analysis, as to why this is an important distinction. Pl. Opp. 9.

13

Rushfield Aff., Ex. E (February 23, 2012 SRO Letter). Accordingly, Plaintiff was required to personally serve the Second Petition upon the District by February 28, 2012.[5] Her failure to do so amounts to a failure to exhaust administrative remedies. *T.W.*, 891 F. Supp. 2d at 441-43.

Moreover, courts in this Circuit have dismissed IDEA claims for want of subject matter jurisdiction where the plaintiff's delay in personal service upon the school district was as little as one day—and here, Plaintiff *never* personally served the Second Petition upon the District. Pl. Opp. 8; *R.S.*, 899 F. Supp. at 290-91 (upholding SRO dismissal where parents timely served the school district's counsel with their petition for SRO review, but failed to personally serve the school district until a day later, because subject matter jurisdiction is an "inflexible rule" that "requires federal courts, on their own motion," to dismiss actions when jurisdiction is lacking); *see also Kelly*, 2009 WL 3163146, at *5. Plaintiff's failure to timely and properly initiate her appeal to the SRO "should be equated with failure to bring an appeal at all," *Murphy*, 1999 WL 980164, at *3, and thus, deprives the Court of subject matter jurisdiction.

The Court also finds that the SRO's decision was not arbitrary and capricious. While Plaintiff argues that the SRO's decision "was arbitrary and not in keeping with the rationale proffered by the SRO in numerous other decisions," she only includes an excerpt from one SRO decision, Appeal No. 95-66, in support of this point. Pl. Opp. 7. In that case, although the SRO declined to dismiss a late-served petition due to lack of prejudice, *unlike* in this case, there was no evidence that the petitioner had been previously warned about complying with procedural requirements, and the petitioner ultimately served the district. *See Application of a Child with a*

---

[5] The IHO Decision included the requisite notice advising the parties of their appellate rights. However, this Court assumes, as the SRO did, that the IHO mailed its January 19, 2013 decision, because it does not indicate a method of delivery on its face. Thus, the date of the decision and four days thereafter, per 8 NYCRR § 279.2(b), are excluded in calculating the 35-day period within which the petition would have to be timely served. *See* Rushfield Aff., Ex. B (SRO Decision at 6); Rushfield Aff., Ex. C (IHO Decision).

*Disability*, Appeal No. 95-66 (Nov. 8, 1995). Moreover, though the SRO, in its discretion, might consider whether a party has suffered prejudice, the regulations require a showing of good cause to excuse untimeliness—and here, Plaintiff provided none. *R.S.*, 899 F. Supp. 2d at 291. "Generally, 'good cause for late filing would be something like postal service error, or, in other words, an event [over which] the filing party had no control.'" *T.W.*, 891 F. Supp. 2d at 441-43 (quoting *Grenon*, 2006 WL 3751450, at *5); *Kermaty v. Arlington Cent. Sch. Dist.*, No. 05 Civ. 0006 (CM) (MDF) (S.D.N.Y. Jan. 25, 2006), Docs. 18, 20 (rejecting excuses for untimeliness such as lawyer being out of the country, and upholding dismissal of day-late petition).

The SRO's dismissal here is supported by the lack of good cause provided by Plaintiff, the manifold procedural missteps by Plaintiff, as well as the fact that counsel was experienced and was specifically warned about the need to timely and properly serve the Second Petition. Rushfield Aff., Ex. B (SRO Decision at 5-6); *Grenon*, 2006 WL 3751450, at *5 ("Plaintiff's counsel cannot be said to be unaware of certain time limitations imposed on parties challenging IHO decisions, and it was [his] duty to comply with the rules for filing."). In his decision, the SRO cited to relevant case law and numerous administrative decisions that were on point. In addition, the essential facts here were not in dispute. Accordingly, it cannot be deemed clear error. *Kelly*, 2009 WL 3163146, at *5.

## IV. CONCLUSION

Plaintiff's procedural errors resulted in a failure to exhaust administrative remedies before filing suit in federal court, and therefore, this Court lacks subject matter jurisdiction to adjudicate her claim. The Court also finds that the SRO's decision to dismiss Plaintiff's case on procedural grounds was not arbitrary and capricious, and will not be disturbed.

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion and dismiss the Complaint. Docs. 1, 6. SO ORDERED.

Dated:   September 5, 2013
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.